**NOT FOR PUBLICATION**                                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

CASEY OIE, D.C. d/b/a/ BLAKE                     :
CHIROPRACTIC and individually and on             :
behalf of others similarly situated,             :
                                                 :        Civil Action No. 07-5447 (JAP)
                    Plaintiff,                   :
                                                 :        **OPINION**
          v.                                     :
                                                 :
TRAVELERS INDEMNITY COMPANY,                     :
                                                 :
                    Defendant.                   :
_____:

     Presently before the Court is Defendant's motion to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. Rule 12(b)(1) and 12(b)(6), or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 56.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.  Having considered all arguments presented, the Court grants Defendants' motion to dismiss.

## I.       Background

     Plaintiff, Blake Chiropractic ("Blake Chiropractic") is in the business of providing medical services.  Blake Chiropractic Center ("Blake Chiropractic") is a Minnesota sole proprietorship with a business address in Hopkins, Minnesota.  Defendant, Travelers Indemnity Company ("Travelers") is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  Travelers conducts and does business in this District.

In the automobile insurance industry, medical payments coverage is a contractual form of "no-fault" coverage entered into between the insurance company and the insured for payment of medical bills.  Personal injury protection coverage ("PIP") also provides no-fault coverage for payment of medical bills.  No-fault, or MedPay, coverage provides for prompt medical treatment, up to policy limits, in order to mitigate harm and improve recovery from injury.  Coverage also helps relieve any anxiety individuals may have regrading the availability of funds for medical expenses.

Plaintiff alleges that Defendant utilizes a fee review software ("fee review"), which compares the amount billed for a procedure to percentile benchmarks an insurer selects.  If there is a portion of the charge that exceeds the benchmark, that portion of the claim is excluded from coverage.  The percentile benchmarks are embedded into the software and used to adjust and audit first-party claims for medical expenses.  Coverage exclusions are denoted in the "Explanation of Review" ("EOR") form, under the "Paid" and "Remark Codes" columns, provided to Plaintiff as codes "PAYU."  The EOR states that the charges are compared to the prevailing billing practices for medical providers within the geographic area and that the reimbursement rate could differ from the actual amount billed.

As examples, Plaintiff cites to several instances of reductions in their Complaint. Plaintiff claims that it submitted a medical bill, which contained a line item charge for $31.47. Travelers reimbursed Plaintiff $24.10, which excluded $7.37 from coverage.  Additionally, on the same invoice, Plaintiff submitted a charge for $69.02.  Travelers reimbursed Plaintiff $51.54, which excluded $17.48 from coverage.  Travelers sent an EOR to Plaintiff, which set forth the "Provider Charge" and the amount "Paid," along with "Remark Codes" and a statement

regarding the basis for the reduced payment.

The insurance policy ("Policy") executed between the insured and Travelers states that Travelers will pay PIP benefits for reasonable medical expenses for necessary medical treatment, in the event of an automobile accident, in accordance with the Minnesota No-Fault Automobile Act.  The coverage limit was $20,000.  The Policy also contained express policy exclusions and limitations.  To the extent there was a disagreement over coverage, in accordance with Minnesota law, disputes were to be submitted to arbitration.

On March 16, 2005, the Travelers' insured executed a Full and Final Release and Satisfaction of Release and Satisfaction of All First Party Claims for Personal Injury Protection or Basice (sic) Economic Loss Benefits and Indemnification Agreement, which included the reimbursement disputes Plaintiff alleges in its Complaint.

## II.      Procedural History

On November 12, 2007, Plaintiff filed the present action against Defendant.  Generally, the Complaint alleges that Defendant's Policy requires payment of all reasonable expenses for necessary medical services.  Plaintiff claims that Defendant improperly uses "computer-generated bill review reports" to arbitrarily discount PIP claims for first-party medical benefits below the amounts billed by the insured's medical providers based on the fee review's artificial percentile reimbursement cap.

The Complaint contains one count for breach of contract.  Furthermore, Plaintiff seeks to represent a class of insureds and/or their assignees, pursuant to Fed. R. Civ. P. 23.  The putative class is named "Contract Class" and includes those insureds who sustained injuries in a covered

occurrence and:

> (a) submitted first-party claims for payment of medical expenses to Travelers; (b) had their claim submitted to computer fee review; (c) received payment in an amount less than the submitted medical charge (but greater than zero) based on a fee review code (such as PAYU); and [(d)] did not exhaust policy limits.

Compl. ¶ 50.  Alternatively, the Complaint identifies a second putative class named "Alternative Contract Class."  The alternate class membership is based on the same criteria as the first class, but limited to insureds in Arkansas, California, Florida, Georgia, Illinois, Kansas, Maryland, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Virginia and Washington.  *Id.*

By Order dated November 16, 2007, in a related case, because a number of similar cases were simultaneously being filed by Plaintiff's counsel and in the interests of judicial economy, the Court ordered a case management conference to be scheduled.  On March 19, 2008, Defendant filed its motion to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff opposes the motion.  On March 20, 2008, the Court held the case management conference.  Having reviewed the parties' submissions, the Court now decides the motion.

## III.    Legal Discussion[1]

---

[1] The plaintiffs in *Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, Case No. 07-4925 (JAP), have asked the Court to certify their class action.  Defendant has chosen to await the Court's decision before addressing the class allegations, pursuant to the Court's January 24, 2008 Order directing the defendants in all related actions to coordinate their arguments.  Because the Court has decided to deny class certification in the *Allstate* matter, the issue, as it pertains to this action, is moot.

Additionally, Defendant argues that the Court should grant its motion to dismiss because Plaintiff has failed to allege proper assignment of the insureds' claims and several of the policies contain a non-assignment provision.  The Court, however, declines from addressing this issue due to equitable

-4-

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

---

arguments made by Plaintiff's counsel and will limit its analysis to the other issues raised.

The Court grants summary judgment in favor of Defendant.  Blake Chiropractic treated a Travelers insured for injuries the insured received from an automobile accident.  New Jersey choice of law rules require that in a diversity case, the forum state's choice of law rule governs. *See Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) ("As this is a diversity case, we apply the forum state's choice of law rule.").  Because insurance policies are construed as contracts between the insurance company and the policyholder, "the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation."[2] *London Assurance v. Companhia De Moagens Do Barreiro*, 167 U.S. 149, 160 (1897).  New Jersey follows this rule.  *See State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37 (N.J. 1980) ("in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy").

"Settlement agreements are contractual in nature and are as binding on the parties as any contract they could make."  *Chalmers v. Kanawyer*, 544 N.W.2d 795, 797 (Minn. Ct. App. 1996).  On March 16, 2005, the insured executed a Full and Final Release and Satisfaction of Release and Satisfaction of All First Party Claims for Personal Injury Protection or Basice (sic) Economic Loss Benefits and Indemnification Agreement ("Settlement Agreement").  Peterson

---

[2] Plaintiffs argue that "New Jersey follows a flexible governmental interest analysis on an issue-by-issue basis."  Pl. Opp. to Strike Class, pg. 7.  This is true for tort cases.  *See e.g. Fu v. Fu*, 160 N.J. 108, 118 (N.J. 1999) ("In tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*...instead, we now apply a more flexible 'governmental-interest' test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation.") (internal citations omitted).  The supporting case Plaintiffs cite, *Erny v. Estate of Merola*, 171 N.J. 86 (N.J. 2002), was a tort case involving joint and several liability in a motor vehicle accident.  Because the present action involves an insurance policy, the Court will follow the established choice-of-law rules for contracts.

Decl., Ex. A.  The Settlement Agreement included the disputed claims for medical expenses incurred by Blake Chiropractic for the insured's treatment.  *Id*.  In relevant part, the Settlement Agreement expressly provided that it was

> ...in full accord and satisfaction of any and all claims, accrued and unaccrued, known and unknown, past, present, and future, for first party personal injury protection benefits resulting from bodily and personal injurieis, and expense damages or losses as a resuly thereof, resulting and to resuly from a certain accident which happened on or about the 24th day of November, 2003, for which [the insured] was covered under the No-Fault Automobile Insurance Act and under a certain Travelers Insurance Company Policy.

*Id*.  Furthermore, through the Settlement Agreement, the insured agreed to

> ...remise, release, and forever discharge...Travelers Insurance Company, its successors, assignees, transferees, and representatives of and from any and all demands, rights, and causes of action, of whatsoever kind and nature in law or equity, contractual or statutory, accrued and unaccrued, known and unknown, past, present, and future for first party personal injury protection benefits....

*Id*.

Therefore, because there are no valid coverage disputes between Plaintiff and Defendant, the Court grants summary judgment in favor of Defendant.[3]

## IV.   Conclusion

––––––––––––––––––––

[3] Furthermore, the Policy the parties entered into was a binding, written agreement, which provided Minnesota's No-Fault Automobile Insurance Act ("No-Fault Act") controlled.  The No-Fault Act requires mandatory arbitration of all PIP payment disputes of $10,000 or less.  In relevant part, the statute states:

> the Supreme Court and the several courts of general trial jurisdiction of this state shall...provide for the mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage.

MINN. STAT. § 65B.525.  Thus, if the parties had not reached a settlement, the insured would have been obligated to arbitrate the claim dispute.

For the reasons stated above, the Court finds that no genuine issues of material fact exist.

Thus, Defendant's motion for summary judgment is granted.  An appropriate order follows.


/s/ JOEL A. PISANO
United States District Judge


Dated: August 26, 2008